**UNITED STATES, Appellee,**

v.

**John RHODIS, Defendant–Appellant.**

**Docket No. 01–1688.**

United States Court of Appeals,
Second Circuit.

Jan. 14, 2003.

Roy Black, Black, Srebnick & Kornspan, P.A., Miami, FL (Christine M. Ng on the brief), for Defendant–Appellant.

John Hinton III, Tax Division, Department of Justice, Washington, D.C. (Eileen O'Connor, Assistant Attorney General, Department of Justice; Robert E. Lindsay and Alan Hechtkopf, Attorneys, Tax Division, Department of Justice, on the brief), for Appellee.

Present: LEVAL, CALABRESI, and B.D. PARKER, Jr., Circuit Judges.

### SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED,

**AND DECREED** that the Judgment of Conviction is **AFFIRMED** and the Sentence of the District Court is hereby **VACATED** and **REMANDED.**

Defendant-appellant John Rhodis appeals from a judgment of the United States District Court for the Eastern District of New York (Joanna Seybert, *Judge*), following his conviction of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and filing false personal and corporate tax returns, in violation of 26 U.S.C. § 7206(1). The Government established that, from 1993 through 1995, John Rhodis failed to report approximately $700,000 in interest and real estate rental income. The District Court sentenced John Rhodis to 36 months in prison, a fine of $75,000, restitution of $99,317, and a three-year term of supervised release. On appeal, John Rhodis challenges the District Court's (1) conscious avoidance jury instruction, (2) two-level sentence enhancement for obstruction of justice, and (3) calculation of the tax loss.

At trial the Government established that John Rhodis participated in a scheme to file false tax returns. The scheme involved the failure to report the income generated by the Roosevelt Avenue Corporations, in which John and his brother, George, were business partners. The Government's evidence showed that John Rhodis worked with the finances of the corporations, handling such tasks as dealing with tenants, negotiating leases, and reviewing financial records. John Rhodis told tenants to make out rent checks in his name, and these checks were deposited into personal accounts over which John Rhodis had complete control. In addition, John Rhodis instructed the corporations' bookkeeper that cash deposits into these accounts should not exceed $10,000 per day so that the IRS would not be notified. There also was testimony that John Rho-

dis instructed the corporations' bookkeeper to maintain an accurate set of rental receipts, including those rental checks diverted into the personal accounts, and to conceal the accurate records from the corporations' tax preparer. Moreover, the Government's evidence established that in 1992 John Rhodis signed a loan application that reported the monthly income generated by the Roosevelt Avenue Corporations to be substantially higher than the amounts reported on their tax returns from 1993 through 1995.

■ In view of the overwhelming evidence of John Rhodis's direct participation in the tax avoidance scheme, any error with respect to the conscious avoidance charge would have been harmless. For the same reason, John Rhodis's assertion that his lawyer was ineffective in the manner in which he objected to the conscious avoidance charge would fail to meet the requirements of *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ We similarly disagree with the contention that the District Court's two-level sentence enhancement for obstruction of justice was erroneous. This Court reviews *de novo* the District Court's application of the Sentencing Guidelines and reviews the District Court's factual findings for clear error. *See United States v. Sisti,* 91 F.3d 305, 310 (2d Cir.1996). The District Court found that John Rhodis (1) had signed a false affidavit accusing the Government's main witness, Mireya DeLaRosa, of forging a $10,000 check and (2) had given his son, Nicholas, this false affidavit for Nicholas to submit to the Government during a criminal tax investigation.

The evidence established that, after DeLaRosa's departure, Nicholas managed his father's office and consulted with his father on business and legal matters. DeLaRosa threatened to go to the authorities

with incriminating information about the Rhodises' finances, and John Rhodis told Nicholas that DeLaRosa had forged a $10,000 check. Nicholas sent John Rhodis an affidavit to that effect for John to sign. John Rhodis signed the affidavit and sent it back to Nicholas. Nicholas testified that, in response to a government investigation, he prepared a submission containing his father's false affidavit. Nicholas further testified that he had shown this submission to his father. At no point did John Rhodis inform the government investigators that his affidavit was false. Given this evidence, the District Court's factual finding that John Rhodis had, in effect, induced his son submit a false affidavit in response to a government investigation is not clearly erroneous. Consequently, the two-level enhancement for obstruction of justice was proper where, as here,

> (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense.

U.S.S.G. § 3C1.1; *see also United States v. Fredette*, 15 F.3d 272, 276 (2d Cir.1994) (finding use of false affidavit in attempt to "derail ... investigation and prosecution" sufficient for § 3C1.1 sentence enhancement).

■ At sentencing, the District Court calculated the tax loss by first adding (1) $144,206 in unreported interest income from 1993 and (2) $565,202, the difference between the gross income fraudulently claimed for 1993–1995 and the gross income subsequently reported for that period in amended tax returns. The District Court then multiplied the sum by 28 per-

cent, arriving at a total tax loss of $200,652. The District Court did not use the net income figures of the amended tax returns and thus did not count the $20,800 in additional deductions listed on one corporation's amended 1993 tax return. In addition to challenging the interest income figure, John Rhodis argues that the District Court should have taken into account the deductions reported on the amended tax return.

When "the amount of the tax loss [is] uncertain[,] the guidelines contemplate that the court will simply make a reasonable estimate based on the available facts." U.S.S.G. § 2T1.1, comment 1. Here, the relevant financial records were, as John Rhodis's son testified, a "total mishmash" in 1996 and "still not organized" by the time of the trial. (Transcript, April 12, 2001, pp. 1484, 1608.) With regard to the unreported interest income from 1993, there was evidence that interest had been paid and testimony that no interest payments had been missed. We therefore conclude that the District Court's calculation of the unreported interest income was reasonable.

■ Under U.S. Sentencing Guidelines § 2T1.1, determination of a tax loss contemplates affording the defendant the benefit of legitimate deductions. *United States v. Martinez–Rios*, 143 F.3d 662, 671 (2d Cir.1998). However, the District Court in its sentencing analysis apparently did not give John Rhodis the benefit of deductions claimed on the amended 1993 return. Since the record is unclear as to whether the District Court considered the deductions illegitimate or failed to consider them at all, we vacate John Rhodis's sentence and remand so that the District Court can clarify its calculation.

We have considered appellant's remaining contentions and find them to be without merit. Accordingly, the District

531

Court's judgment of conviction is hereby **AFFIRMED** and its sentence is hereby **VACATED** and **REMANDED**.